```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
KAREN DURKA,                        :    06 CV 4106 (RJH)
                                    :
              Plaintiff,            :
                                    :    COMPLAINT
       -against-                    :
                                    :
                                    :    PLAINTIFF DEMANDS
FORTUNE SWIMWEAR, LLC and           :    TRIAL BY JURY
STUART GELLER,                      :
                                    :
              Defendants.           :    ECF Case
                                    :
------------------------------------x
```

Plaintiff Karen Durka, by her attorneys, Bantle & Levy LLP, alleges for her complaint against defendants as follows:

## NATURE OF THE ACTION

1.  This is an action for employment discrimination based on sexual orientation in violation of the the New York State Human Rights Law, New York Executive Law §290 et seq., (the "Executive Law"), and the New York City Administrative Code §8-101 et seq., (the "Administrative Code"), and employment discrimination based on plaintiff's status as a victim of domestic violence in violation of the Administrative Code. Plaintiff seeks declaratory and injunctive relief and damages.

## JURISDICTION AND VENUE

2.  This suit is brought and jurisdiction lies pursuant to 28 U.S.C.§1332 based on diversity of citizenship because the matter in controversy is between citizens of

different States and the matter in controversy exceeds $75,000.

3. Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the unlawful acts and omissions giving rise to claims alleged herein were committed within the district of the United States District Court, Southern District of New York.

4. Plaintiff has mailed a copy of this complaint with the Corporation Counsel for the City of New York Law Department and the New York City Commission on Human Rights as required under New York City Administrative Code, §8-502.

## PARTIES

5. Plaintiff Karen Durka, is a citizen of the United States and the State of New York who currently resides at 261 West 71st Street, New York, New York.

6. Durka is a lesbian.

7. At all times relevant to the adverse employment actions complained of in this action, Durka was and is a victim of domestic violence as that term is defined in §8-107.1 of the Administrative Code.

8. Durka was employed by defendant Fortune Swimwear, LLC ("Fortune" or the "Company") as a full-time employee from in or about May 2002 to March 29, 2006.

9. Upon information and belief, defendant Fortune is a California corporation with its principal place of business in

Vernon, California.

10. At all times relevant herein, Fortune was and is a manufacturer of swimwear for the mass market, and maintained an office and showroom located at 1411 Broadway in New York City, New York.

11. At all times relevant hereto defendant Stuart Geller ("Geller") was and is President of Fortune.

12. Upon information and belief, Geller was and is a citizen and resident of the United States and the State of California.

13. All defendants are persons within the meaning of New York Executive Law §292(1), and New York City Administrative Code §8-102(1), and Fortune is an employer within the meaning of New York City Administrative Code §§8-102(5) and 8-107.

## STATEMENT OF FACTS

14. Durka commenced employment with Fortune as an account executive in or about May, 2002.

15. In this capacity, Durka was responsible for sales of Fortune's swimwear products to several national accounts, including, inter alia, Wal-Mart and JC Penney.

16. Throughout her employment at Fortune, Durka excelled in the performance of her duties, ranking as one of Fortune's highest grossing salespersons.

17. Prior to her termination, Durka received

uniformly positive feedback on her performance as a salesperson from members of Fortune's management.

18. Fortune's President, Geller, was Durka's direct supervisor.

19. Geller and the other members of Fortune's management were located in Fortune's corporate offices in Vernon, California.

20. Geller came to New York City approximately six to eight times a year to work with Durka and the other members of Fortune's New York team.

21. During the first months of her employment at Fortune, Durka was advised by colleagues that Geller, Fortune's President, was "extremely homophobic".

22. At least one colleague of Geller's advised her that her "job would be in jeopardy" if Geller learned of her sexual orientation.

23. Based on these warnings, and her own observation of Geller's conduct, Durka did not discuss her sexual orientation with members of Fortune's management.

24. In particular, Durka made certain to keep her sexual orientation secret from Geller and his wife, Helen, who also worked for Fortune.

25. Geller frequently told homophobic jokes and referred to homosexuals as "fags" and/or "faggots" in Durka's

presence and/or during telephonic communications with her.

26. During a visit to New York in or about March 2006, Geller became agitated when Durka compared him to an openly gay former employee of Fortune Casuals, a company affiliated with Fortune, telling Durka "do not compare me to somebody like that".

27. On Friday, March 24, 2006, Durka was brutally choked and beaten in her home by her romantic partner of several years (the "Assault"). As a result of the Assault, Durka sustained bruising and cuts on her face, neck and body.

28. In the aftermath of the Assault, Durka began having panic attacks, and suffering from anxiety and depression.

29. Notwithstanding the Assault and its after-effects, Durka reported to work on Monday, March 27, 2006.

30. While at work on March 27, Durka experienced several severe panic attacks and repeatedly broke down into tears.

31. Late in the day on March 27, Durka advised Mary Capozzi, a Fortune designer who worked with her at Fortune's New York office and who was aware of her sexual orientation, that she had been attacked and assaulted by her partner and that she was having trouble dealing with the consequences of the Assault.

32. On Tuesday, March 28, 2006, Durka was scheduled to fly to Dallas, Texas with Capozzi to meet with representatives of JC Penney regarding Fortune's swimwear designs for the summer

2007 season (the "Texas Meeting").

33. On the morning of March 28, Durka was still experiencing panic attacks and uncontrolled weeping as a result of the Assault.

34. On this basis, Durka concluded that she was not emotionally or physically up to traveling to Texas and participating in the Texas Meeting.

35. Durka called Capozzi and explained to her that given her emotional and physical state she would be unable to go to Texas Meeting with her.

36. After Capozzi unsuccessfully sought to persuade Durka to reconsider, Durka and Capozzi agreed that Capozzi would arrange for another Fortune account executive, Bonnie Maltz, to attend the Texas Meeting in Durka's stead.

37. Later that morning, Durka called Fortune's Human Resources Department in California and notified Adeleine Kevorkian that she was not well enough to attend the Texas Meeting.

38. After speaking with Durka, Capozzi called Geller in California and advised him that Durka had been assaulted by her "girlfriend" over the weekend and that as a result of the Assault she was unable to attend the Texas Meeting.

39. On information and belief, Capozzi and Maltz attended and successfully conducted the meeting with JC Penney.

40. On information and belief, shortly after the conclusion of the Texas Meeting, Capozzi called Geller and advised him that the meeting had been a success.

41. On Wednesday, March 29, 2006, Durka was unable to go to work due to the ongoing physical and emotional repercussion of the Assault, including that she continued to suffer from panic attacks.

42. On the afternoon of March 29, Durka received a telephone call from Geller and Chief Financial Officer Ann Kennedy in which she was advised that her employment with Fortune was being terminated effectively immediately (the "Termination Call").

43. In the Termination Call, Geller told Durka that she was being terminated due to "excessive absenteeism".

44. On or about March 30, 2006, Durka received a letter from Geller and Kennedy, dated March 29, 2006, memorializing the termination of her employment (the "Termination Letter").

45. In the Termination Letter, Fortune claimed that the decision to immediately terminate Durka was made after a "review of [Durka's] performance".

46. In the Termination Letter, Fortune claimed that Durka's alleged "excessive absenteeism" evidenced an alleged "lack of commitment to the Company."

47. In the Termination Letter, Fortune referred to Durka's inability to attend the Texas Meeting as "the final straw."

48. The purported explanation for Durka's termination was a pretext for discrimination based on sexual orientation and/or Durka's status as a victim of domestic violence, in violation of state and city laws against such discrimination.

49. At no time prior to learning of Durka's sexual orientation and status as a victim of domestic violence did Geller, Kennedy or any other member of Fortune's management advise Durka that she was failing to meet the Company's performance expectations or that management believed she lacked commitment to the Company.

50. To the contrary, as recently as February 2006 Geller spoke approvingly of Durka's job performance and advised her that he was contemplating terminating one of her colleagues and assigning several of her accounts to Durka.

51. Moreover, in recognition of Durka's dedication and performance, in February 2006, the Company voluntarily paid a portion of certain medical expenses incurred by Durka.

52. Similarly, at no time prior to Durka's termination did Geller, Kennedy or any other member of Fortune's management advise her that she was in danger of being disciplined or terminated based on excessive absences.

53. As a consequence of the foregoing, Durka has been unlawfully terminated from her employment with Fortune, and has thereby been denied continuing opportunities for promotion, training, advancement, recognition, and increased compensation.

54. As a result of defendants' unlawful discriminatory employment practices, Durka has suffered a loss of income and benefits.

55. As a result of defendants' unlawful acts, Durka has sustained serious pain and suffering, and severe mental and emotional harm and distress.

56. Defendants' acts were performed willfully, intentionally, and with reckless indifference to Durka's protected rights.

### COUNT I

57. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 56 as if fully set forth herein.

58. By their actions and omissions, defendants have discriminated against plaintiff on account of her sexual orientation with respect to compensation, benefits and terms, conditions and privileges of employment, in violation of the New York Executive Law, §290 et seq., commonly known as the New York Human Rights Law.

59. Defendant Geller violated New York Executive Law

§296(6) by aiding, abetting, inciting and coercing the unlawful discrimination outlined above.

60. As a result of defendants' discrimination against her, plaintiff has suffered damages, including without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to her reputation and career.

### COUNT II

61. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 60 as if fully set forth herein.

62. By their actions and omissions, defendants have discriminated against plaintiff on account of her sexual orientation with respect to compensation, benefits and terms, conditions and privileges of employment, in violation of New York City Administrative Code §8-107(1)(a).

63. Defendant Geller violated New York City Administrative Law §8-107(6) by aiding, abetting, inciting and coercing the unlawful discrimination outlined above.

64. As a result of defendants' discrimination against her, plaintiff has suffered damages, including without limitation, deprivation of income and benefits, termination of

employment, loss of opportunity for advancement and promotion, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to her reputation and career.

## COUNT III

65. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 64 as if fully set forth herein.

66. By their actions and omissions, defendants have discriminated against plaintiff on account of her status as a victim of domestic violence with respect to compensation, benefits and terms, conditions and privileges of employment, in violation of New York City Administrative Code §8-107(1)(a).

67. Defendant Geller violated New York City Administrative Law §8-107(6) by aiding, abetting, inciting and coercing the unlawful discrimination outlined above.

68. As a result of defendants' discrimination against her, plaintiff has suffered damages, including without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to her reputation and career.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant judgment for plaintiff and that it order and award plaintiff the following relief against defendants:

(1) A declaratory judgment that the acts, policies, practices and procedures complained of herein violated plaintiff's rights as secured by the New York Executive Law, §290 et seq., and the New York City Administrative Code, §8-101 et seq.;

(2) An injunction restraining and enjoining defendants from engaging in further discriminatory acts in violation of the New York Executive Law and the New York City Administrative Code;

(3) Damages in the form of (a) back pay with interest based on plaintiff's appropriate compensation had she not been discriminated against; (b) front-pay; (c) reimbursement for lost benefits; and (d) reimbursement for lost experience, training opportunities and other benefits, in an amount to be shown at trial;

(4) Compensatory damages for her emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount not less than $1,000,000;

(5) Punitive damages in an amount not less than $2,000,000;

(6) Attorneys fees;

(7) Costs and disbursements;

    (8)   Interest; and

    (9)   Such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands trial by jury.

Dated:    New York, New York
            May 4, 2006

                                  BANTLE & LEVY LLP

                                  By:_____
                                      Robert L. Levy (RL-1633)

                                  817 Broadway
                                  New York, New York 10003
                                  (212) 228-9666
                                  Attorneys for Plaintiff